UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABIGALE M. S.,[1]

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civil Action 2:25-cv-386
Chief Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Abigale M. S. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply Memorandum (ECF No. 12), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

Plaintiff protectively filed her SSI application on July 17, 2020, alleging that she became disabled beginning on August 31, 2000. (R. at 342.) Plaintiff's application was denied, and she

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

sought judicial review. (*Id*. at 1681–1702, 1703–11, 1712–23.) This Court determined that the ALJ had committed reversible error when assessing state agency reviewers' prior administrative findings about Plaintiff's social interaction limits, and the matter was remanded.

Upon remand, the ALJ held a telephonic hearing on November 7, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 1646–80.) A vocational expert ("VE") also appeared and testified. On December 13, 2024, the ALJ issued a second unfavorable determination. (*Id*. at 1609–45.)

Plaintiff seeks judicial review of that second unfavorable determination. She contends that the ALJ again erred when assessing state agency reviewers' prior administrative findings about her social interaction limits. (Pl.'s Statement of Errors 15–19, ECF No. 10; Pl.'s Reply 2–4, ECF No. 12.) Specifically, Plaintiff contends that the ALJ erred by omitting from her residual functional capacity[2] ("RFC") the reviewers' limitation to superficial interactions with supervisors without an adequate explanation for that omission. Defendant correctly argues that Plaintiff's contention of error lack merit. (Def.'s Mem. in Opp'n 4–10, ECF No. 11.)

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

2

## II. THE ALJ'S DECISION

The ALJ issued the second unfavorable determination on December 13, 2024. (R. at 1609–45.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (*Id*. at 1614.) At step two, the ALJ found that Plaintiff had the following severe medically determinable physical impairments: Chiari 1 malformation; headaches/migraines; vasodepressor, neurocardiogenic syncope. (*Id*. at 1615.) The ALJ additionally found that Plaintiff had "psychological conditions variously described" including unspecified learning disorder; history of fetal alcohol syndrome; bipolar disorder; major depressive disorder; other specified depressive disorder; unspecified anxiety disorder; attention deficit hyperactivity disorder (ADHD)/attention deficit disorder (ADD); post-traumatic stress disorder (PTSD); intermittent explosive disorder; mood disorder; and

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

generalized anxiety disorder. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: She can never climb ladders, ropes, or scaffolds. She cannot be exposed to vibrations, unprotected heights, unprotected moving mechanical machinery, or moving machinery. She cannot work around sharp, unprotected implements. She can have occasional exposure to loud noise as defined in the Dictionary of Occupational Titles (DOT). She cannot perform any occupational driving. She can have occasional concentrated exposure to extreme cold, heat, humidity, and wetness as well as dust, fumes, odors, gases, and other pulmonary irritants. She cannot work in an outdoor environment. The claimant can engage in simple, routine, and repetitive tasks but not at a production rate pace such as required working on an assembly line. She can make judgments on simple work and respond appropriately to usual work situations where duties are generally predictable, short cycle, and stable and handle occasional changes in a routine work setting that are explained in advance and implemented such that she can adjust her performance to meet new task criteria or requirements. She cannot perform work that requires a daily production quota, i.e., piecework, but can perform goal-oriented work and meet end of day production requirements. *She can never interact with the general public. She can have occasional interaction with supervisors and coworkers, and, with coworkers, she cannot engage in team or tandem tasks and interaction should be superficial in nature defined as the ability to exchange greetings and engage in casual conversation although work-related interactions should be of short duration for a specific purpose such as work-related exchanges.* [emphasis added]

(*Id*. at 1618.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 1635.) Relying on the VE's testimony, at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of routing clerk, sorter, and tester. (*Id*. at 1636.) Accordingly, the ALJ determined that during the relevant time frame, Plaintiff was not disabled as defined in the Social Security Act. (*Id*. at 1637.)

4

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.  ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred by omitting from her RFC the state agency reviewers' finding that she was limited to superficial interactions with supervisors without adequate explaining that omission. (Pl.'s Statement of Errors 15–19, ECF No. 10; Pl.'s Reply 2–4, ECF No. 12.) This contention of error lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

---

[4] Because Plaintiff's application was filed in 2021, it is subject to regulations governing applications filed after March 27, 2017.

Here, the state agency reviewers found that due to Plaintiff's social interaction limits, she was able to "relate adequately on a superficial basis." (R. at 196–97, 208.) Notably, this superficial interaction limit presumably applied to Plaintiff's ability to interact with anyone.

The ALJ determined that this superficial interaction[5] limit was only partly persuasive. (*Id*. at 1632–33.) Specifically, the ALJ accepted it as to Plaintiff's ability to interact with coworkers, but she found it insufficiently restrictive as to Plaintiff's interactions with the public and instead incorporated into Plaintiff's RFC a complete limit on her interactions with the public. (*Id*.) The ALJ explained that this more restrictive determination for public interactions was based, in part, on Plaintiff's testimony that she did not go out in public without her fiancée. (*Id*. at 1633.)

The ALJ also rejected the reviewers' superficial interaction limit as to supervisors because it was too restrictive. (*Id*. at 1632.) The ALJ wrote as follows:

> With regard to superficial, the finding may read to indicate that the State agency examiners concluded that the claimant has a general limitation in the quality of interaction in which the claimant may engage in a work setting. The undersigned only finds that part of the opinion regarding the quality of the interaction is only somewhat persuasive. The claimant was consistently cooperative in examinations in the record, which does not support the claimant being limited in the quality of interaction with supervisors (Exhibits 38F/11, 39F/7-13, 18, 22-23, 26, 30, 33, 36-40 and 40F/19, 28).
>
> While she also alleged at the hearing that she had an incident with her supervisor at Wendy's, the claimant previously did not allege any issues with authority figures and denied ever being fired or laid off because of problems getting along with others (Exhibit 3E/6). She admitted as well that she was not fired by her supervisor at Wendy's, but rather she herself quit (hearing testimony). This does not appear consistent as well with the inference by the State agency consultants that the claimant would be limited in the quality of interaction with supervisors. The undersigned does not find that part of the opinion is persuasive as a result. Instead, the residual functional capacity finds the claimant can have occasional interaction with supervisors based upon the foregoing herein.

---

[5] The ALJ defined superficial interaction as the ability to exchange greetings and engage in casual conversation and that work-related interactions would be of short duration and for a specific purpose such as work-related exchanges. (R. at 1632.)

7

(*Id*.)

As this discussion demonstrates, the ALJ determined that the reviewers' superficial interaction limit was not persuasive as to supervisors for several reasons. (*Id*. at ) First, the ALJ found that such a limit lacked support because Plaintiff was consistently cooperative with healthcare providers during examinations. (*Id*.) Substantial evidence supports that reason. As the ALJ explained, Plaintiff's providers regularly noted that she was cooperative during mental status examinations. (*Id*. at 1980, 1988, 2000, 2002, 2004, 2009, 2011, 2013, 2014, 2017, 2020, 2021, 2024, 2027, 2029, 2031, 2039, 2060, 2069.)

The ALJ also explained that a limit to superficial interactions with supervisors was not persuasive because it was inconsistent with Plaintiff's reported history. The ALJ explained that even though Plaintiff testified that she had an incident with a supervisor while working at Wendy's, she had not previously alleged any issues with authority figures or that she had been fired or laid off because of problems with others. (*Id*. at 1632.) Substantial evidence supports that explanation as well. When completing a function report that asked Plaintiff how well she got along with authority figures, Plaintiff did not allege that she had any issues, and she further indicated that she had never been fired or laid off because of problems with others. (*Id*. at 388.)

Finally, the ALJ explained that a limit to superficial interactions with supervisors was not persuasive because Plaintiff was not actually fired because of any interaction issues. The ALJ explained that Plaintiff initially testified that she lost her job because of the incident with her Wendy's supervisor but also acknowledged that she had quit that position and was not fired. (*Id*. at 1632.) Substantial evidence also supports that explanation. Plaintiff testified that she lost her job as a result of getting "snappy" with her Wendy's supervisor but further clarified that she quit rather than being terminated. (*Id*. at 1667–68, 1669.)

8

Plaintiff does not directly challenge the ALJ's record-based reasons for determining that a limit to superficial interactions with supervisors was not persuasive. Instead, she points to checkbox forms completed by: 1) her treating physician, Dr. Nunn, indicating that she was "seriously limited" in accepting instructions and criticism from supervisors, and 2) a social worker, Ms. Chapman, indicating that she was "unable to meet competitive standards" in that area. (Pl.'s Statement of Errors 17, ECF No. 10; Pl.'s Reply 3–4, ECF No. 12.) But the ALJ determined that Dr. Nunn's opinion was only somewhat persuasive and that other evidence from Ms. Chapman was not persuasive. Plaintiff does not challenge these assessments.

Instead, Plaintiff suggests that because Dr. Nunn's and Ms. Chapman's checkbox responses aligned with the state agency reviewers' superficial interaction limit, that limit was "uncontroverted," and therefore, the ALJ should have adopted it. But an RFC determination must be "based on all the relevant evidence" in a claimant's case record, not just portions of medical opinions that appear consistent with each other. §§ 404.1545(a)(1); 416.945(a)(1). Indeed, an "ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Because the ALJ is responsible for determining an RFC based on a full record, the RFC need not mirror any medical opinion verbatim to be supported by the record. *Id*.

In any event, the ALJ did not reject the reviewers' superficial interaction limit outright. Instead, the ALJ found that it was persuasive for Plaintiff's co-worker interactions, but that it was more restrictive than necessary for interactions with supervisors, and not restrictive enough for interactions with the general public. This assessment was substantially supported by the record evidence even if the record evidence could have also supported a different determination. The undersigned therefore concludes that Plaintiff's contention of error lacks merit.

9

## V. DISPOSITION

For all the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE